IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOAN LOMBARD<br>323 Superior Road<br>Egg Harbor Township, NJ 08234<br><br>          Plaintiff,<br>     v.<br><br>NEW JERSEY DEPARTMENT OF<br>TRANSPORTATION<br>1035 Parkway Avenue<br>Trenton, NJ 08625<br><br>          Defendant. | CIVIL ACTION NO.:<br><br>**CIVIL ACTION COMPLAINT**<br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Plaintiff Joan Lombard ("Plaintiff"), by and through undersigned counsel, hereby complains as follows against Defendant New Jersey Department of Transportation ("Defendant").

## INTRODUCTION

1. Plaintiff has initiated the instant action to redress violations by Defendant of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and the New Jersey Law Against Discrimination ("NJLAD"). Defendant subjected Plaintiff to severe and pervasive harassment based on her sex and/or sexual orientation, as well as based on her ethnicity, ancestry, and/or national origin. Defendant retaliated against Plaintiff for complaining of such harassment by intensifying its harassment of Plaintiff. Defendant constructively discharged Plaintiff by permitting such severe and pervasive harassment to continue unabated.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims herein arise under laws of the United States, Title VII and

Section 1981. This Court has jurisdiction over Plaintiff's state law claims because they are supplemental to Plaintiff's underlying federal claims and arise out of the same transaction or occurrences, having the same common nucleus of operative facts pursuant to 28 U.S.C. § 1367(a).

3. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice.

4. Pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), venue is properly laid in this judicial district because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5. Plaintiff has exhausted all administrative remedies relative to her Title VII claims.

## PARTIES

6. The foregoing paragraphs are incorporated herein as if set forth in full.

7. Plaintiff is an adult individual with an address as set forth in the caption.

8. Defendant is a company that does business in New Jersey at the address set forth in the caption.

## FACTUAL BACKGROUND

9. The forgoing paragraphs are incorporated herein as if set forth in full.

10. Plaintiff is female.

11. Plaintiff is of Italian descent.

12. Defendant hired Plaintiff in or around June 2007 to work in its Maintenance Department at its Deepwater, NJ location. In or around August of 2007 Defendant transferred Plaintiff to its Pomona, NJ location at her request.

13. In or around 2011, Assistant Crew Supervisor Frank Schoenstein ("Supervisor Schoenstein") sexually harassed and discriminated against Plaintiff on the basis of her sex.

14. In or around January of 2012, Plaintiff reported to Respondent's Division of Civil Rights and Affirmative Action ("DCRAA") that Supervisor Schoenstein had sexually harassed and discriminated against her.

15. Despite substantiating in-part Plaintiff's claims, DCRAA failed to take proper remedial measures in response to Supervisor Schoenstein's sexual harassment and discrimination of Plaintiff.

16. As a result, Supervisor Schoenstein's sexual harassment and discrimination continued, prompting complaints not only from Plaintiff but also from other employees who worked with him.

17. In or around January 2013, Defendant transferred Supervisor Schoenstein to a different location, due to repeated complaints from Plaintiff and her coworkers about Supervisor Schoenstein's harassing conduct.

18. Thereafter, Plaintiff noticed that certain safety measures were being ignored at work, and Plaintiff reported same to Supervisor David Pusey ("Supervisor Pusey").

19. Supervisor Pusey ignored Plaintiff's reports.

20. On or around June 7, 2014, Plaintiff reported to the New Jersey Department of Labor & Workforce Division of Public Safety that her reports to Supervisor Pusey regarding safety measures were being ignored by Supervisor Pusey, and that she believed that Supervisor Pusey was ignoring her complaints because she was a woman in a male-dominated workplace.

21. In retaliation for her complaint of discrimination and harassment based on her sex, Supervisor Pusey began disciplining her for alleged insubordination which never occurred and which Supervisor Pusey knew had not occurred.

22. On or around September 15, 2014, Supervisor Steve Mongiovi ("Supervisor Mongiovi") referred to Plaintiff as a "Guinea," a derogatory slur used to refer to Italians.

23. Plaintiff complained to Defendant's DCRAA representative Cheryl Warden, DCRAA Investigator Leslie M. (Last Name Unknown), Crew Supervisor Vincent Bozzo ("Supervisor Bozzo"), and Assistant Commissioner Jeanne Victor ("Assistant Commissioner Victor") about Supervisor Mongiovi's use of a derogatory slur on the basis of her ethnicity, ancestry, and/or national origin.

24. In retaliation for Plaintiff's complaints against him, Supervisor Mongiovi, and male co-workers friendly with Supervisor Mongiovi, treated Plaintiff with increased hostility, including but not limited to Defendant's Equipment Operator Michael Stites ("Operator Stites"), referring to Plaintiff as a "dyke" and "carpet muncher."

25. Plaintiff complained of the continuing harassment to Supervisor Bozzo, and Regional Supervisor Donald Bourne, and Area Supervisor Walter Adams.

26. Despite her numerous complaints about Supervisor Mongiovi's use of the word "Guinea," and despite the retaliatory behavior, Defendant took no remedial action.

27. In or around the beginning of April of 2015, Plaintiff witnessed Supervisor Mongiovi grab a male co-worker's backside in a sexually inappropriate manner.

28. Plaintiff reported Supervisor Mongiovi's sexual harassment of her co-worker to Supervisor Bozzo.

29. Supervisor Bozzo took no remedial action in response to Plaintiff's complaint.

30. Consequently, in or around April of 2015, Plaintiff filed an internal Equal Employment Opportunity ("EEO") complaint regarding Supervisor Mongiovi's use of derogatory slurs on the basis of her ethnicity, ancestry, and/or national origin Supervisor Mongiovi's sexual harassment of her and coworkers Frank Metz, Romeo Serbeck, and Scott Kiefer, the hostile work environment created by same, and Defendant's failure to take appropriate remedial action in response to her complaints.

31. On or around April 20, 2015, shortly after Plaintiff filed her internal EEO complaint, Operator Stites called Plaintiff a "whore."

32. On or around April 21, 2015, Plaintiff reported Operator Stites' "whore" comment to Assistant Commissioner Victor.

33. On April 29, 2015, in retaliation for Plaintiff's internal EEO complaint, Supervisor Mongiovi assaulted Plaintiff by forcefully and deliberately slamming a truck door on Plaintiff's foot, causing severe bruising.

34. Plaintiff immediately informed Assistant Commissioner Victor that Supervisor Mongiovi assaulted her.

35. As a result of the continued hostile discriminatory and retaliatory behavior by Supervisor Mongiovi and the male employees who were friendly with him, Plaintiff requested a temporary transfer from Defendant's Pomona yard to Defendant's Mays Landing yard, to last until Defendant transferred Supervisor Mongiovi out of the Pomona yard.

36. In June 2015, Defendant transferred Plaintiff to the Mays Landing yard.

37. Following her transfer, Supervisor Mongiovi began to regularly appear at the Mays Landing Yard, and he continued making hostile, retaliatory comments towards Plaintiff.

38. On or around July 27, 2015, following an investigation Defendant issued a Determination that substantiated Plaintiff's allegations as set forth in her April 2015 EEO complaint.

39. Specifically, Defendant confirmed that its internal investigation found that "witnesses confirmed Mr. Mongiovi used the term 'guinea' when speaking to you [Plaintiff]," "witnesses confirmed Mr. Mongiovi grabbed an employee's backside," and additionally "confirmed that Mr. Bozzo was notified of these incidents and did not refer these matters to Civil Rights."

40. On or around July 28, 2015, Plaintiff filed a charge of national origin and sex discrimination and harassment with the Equal Employment Opportunity Commission ("EEOC").

41. Plaintiff continued to request that Supervisor Mongiovi be transferred to a different yard (so that she could return to the Pomona yard) or be fired, and that any further retaliatory behavior towards her cease.

42. Despite her requests, Defendant took no action against Supervisor Mongiovi, and made no effort to address retaliatory behavior against Plaintiff by Defendant's employees.

43. Additionally, Defendant claimed, in a letter dated August 28, 2015, to have investigated Plaintiff's complaints against Operator Stites, but refused to provide Plaintiff with a copy of its determination.

44. On or around October 19, 2015, Plaintiff was forced to resign from employment with Defendant due to continued sex- and ethnicity, ancestry, and/or national origin-based harassment and retaliatory treatment.

45. On or around July 11, 2016, following a full hearing, the Honorable Frank Raso of Folsom Atlantic County Municipal Court found Supervisor Mongiovi guilty of assault for having

forcefully and deliberately slammed a truck door on Plaintiff's foot following Plaintiff's internal EEO complaint.

46. On March 24, 2017, the EEOC, following an in-depth investigation, issued a Determination that substantiated Plaintiff's allegations as set forth in her July 2015 EEOC Charge.

47. Specifically, the EEOC found that in response to Plaintiff's complaints of discrimination and harassment, "the individuals found to have made the discriminatory comments were not appropriately disciplined;" and that "therefore, [Defendant] failed to take reasonable care to promptly and effectively prevent and correct the harassment."

48. The EEOC further found that "as a result of [Plaintiff]'s complaints, [Defendant] engaged in retaliatory behavior including, but not limited to, physical assault in order to intimidate [Plaintiff] and issuing [Plaintiff] a counseling. . ."

49. The EEOC determined that Defendant's retaliatory actions against Plaintiff "could have a chilling effect on employees from making a complaint of discrimination in the future."

50. Based on the above, the EEOC determined that there was "reasonable cause to believe that [Defendant] violated Title VII by subjecting [Plaintiff] to harassment and retaliation for making a claim of harassment."

## COUNT I
## Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")
**(Ancestry/Sex Discrimination)**

51. The forgoing paragraphs are incorporated herein as if set forth in full.

52. Title VII prohibits employers, such as Defendant, from discriminating against and harassing an employee, such as Plaintiff, on the basis of sex and/or ethnicity, ancestry, and/or national origin.

53. Defendant violated Plaintiff's rights under Title VII by discriminating against and harassing Plaintiff because of her sex and/or ethnicity, ancestry, and/or national origin.

54. Defendant violated Plaintiff's rights under Title VII by constructively discharging Plaintiff in retaliation for her complaints of sex and/or ethnicity, ancestry, and/or national origin discrimination and/or harassment.

55. These actions as aforesaid constitute violations of Title VII.

## COUNT II
## Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")
### (Retaliation)

56. The foregoing paragraphs are incorporated herein as if set forth in full.

57. Defendant constructively discharged Plaintiff for complaining about sex and/or ethnicity, ancestry, and/or national origin discrimination and/or harassment.

58. Defendant's actions as set forth constitute violations of Title VII.

59. Plaintiff has suffered harm as a result of Defendant's actions.

## COUNT III
## Violations of 42 U.S.C. § 1981
### (Hostile Work Environment –Ancestry/Ethnicity/National Origin Discrimination)

60. The forgoing paragraphs are incorporated herein as if set forth in full.

61. Plaintiff was consistently subjected to severe and/or pervasive harassment and discrimination by Defendant, on the basis of her ethnicity, ancestry, and/or national origin which was objectively and subjectively offensive.

62. Any reasonable person would have felt that he or she was subjected to a hostile work environment due to Defendant's conduct.

63. These actions as aforesaid constitute violations of 42 U.S.C. § 1981.

## COUNT IV
### Violations of 42 U.S.C. § 1981
**(Retaliation)**

64. The foregoing paragraphs are incorporated herein as if set forth in full.

65. Defendant constructively discharged Plaintiff for complaining about harassment and discrimination on the basis of her ethnicity, ancestry, and/or national origin.

66. Defendant's actions as set forth constitute violations of 42 U.S.C. § 1981.

67. Plaintiff has suffered harm as a result of Defendant's actions.

## COUNT V
### Violations of the New Jersey Law Against Discrimination ("NJLAD")
**(Gender/Sexual Orientation/Ancestry Discrimination)**

68. The forgoing paragraphs are incorporated herein as if set forth in full.

69. The NJLAD prohibits employers, such as Defendant, from discriminating against and harassing an employee, such as Plaintiff, on the basis of gender, sexual orientation and/or ethnicity, ancestry, and/or national origin.

70. Defendant violated Plaintiff's rights under the NJLAD by discriminating against and harassing Plaintiff because of her gender, sexual orientation and/or ethnicity, ancestry, and/or national origin.

71. Plaintiff was subjected to an unlawful hostile work environment because of her gender, sexual orientation and/or ethnicity, ancestry, and/or national origin.

72. These actions as aforesaid constitute violations of the NJLAD.

## COUNT VI
### Violations of the New Jersey Law Against Discrimination ("NJLAD")
**(Retaliation)**

73. The forgoing paragraphs are incorporated herein as if set forth in full.

74. The NJLAD prohibits employers, such as Defendant, from retaliating against an employee, such as Plaintiff, for complaining of gender, sexual orientation and/or ethnicity, ancestry, and/or national origin discrimination and/or harassment.

75. Defendant violated Plaintiff's rights under NJLAD by constructively discharging her for her complaints of gender, sexual orientation and/or ethnicity, ancestry, and/or national origin discrimination and/or harassment.

76. These actions as aforesaid constitute violations of the NJLAD.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to be prohibited from maintaining their illegal policy, practice, or custom of discriminating against employees or prospective employees based on their sex, sexual orientation, ethnicity, and/or ancestry;

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to lost past earnings and future lost earnings;

C. Plaintiff is to be awarded punitive damages in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious, and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be awarded damages for emotional distress and/or pain and suffering and is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate;

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable law; and

     F.     Plaintiff's claims are to receive a trial by jury.

Respectfully submitted,

**SWARTZ SWIDLER, LLC**

<u>*s/ Manali Arora*</u>
Manali Arora, Esq.
Richard S. Swartz, Esq.
1101 Kings Highway North, Suite 402
Cherry Hill, NJ 08034
Phone: (856) 685-7420
Fax: (856) 685-7417
Email: marora@swartz-legal.com
Email: rswartz@swartz-legal.com

Date: January 30, 2018