NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                    :
Joan LOMBARD,                       :
                                    :
            Plaintiff,              :
                                    :
     v.                             :   Civil No. 18-01319 (RBK/KMW)
                                    :
NEW JERSEY DEPARTMENT OF            :   **OPINION**
TRANSPORTATION,                     :
                                    :
            Defendant.              :
_____ :

**KUGLER**, United States District Judge:

**THIS MATTER** comes before the Court on Defendant New Jersey Department of Transportation's Motion to Dismiss (Doc. No. 8) Plaintiff Joan Lombard's complaint (Doc. No. 1) for failure to state a claim under Fed. R. Civ. P. 12b(6). The complaint alleges that Defendant violated Title VII of the Civil Rights Act of 1964. Count I states, in relevant part, that Defendant discriminated against Plaintiff based on her sex and national origin. (Doc. No. 1). Count II states that Defendant constructively discharged her for reporting the discrimination at issue. (Doc. No. 1). This Court, having considered the pleadings and briefs, **DENIES** Defendant's motion to dismiss.

   **I.      BACKGROUND**[1]

---

[1] On this motion to dismiss, the Court accepts as true the facts as pled in the complaint and construes them in the light most favorable the Defendants. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

Joan Lombard ("Plaintiff") is a woman of Italian descent who was employed in a male-dominated workplace. Compl. [Doc. No. 1] ¶¶ 10–11, 20. In June 2007, New Jersey Department of Transportation ("Defendant") hired her to work in its Maintenance Department in Deepwater, New Jersey, and she subsequently transferred, at her request, to Defendant's office in Pomona, New Jersey. *Id.* ¶ 12.

Lombard claims she first began experiencing harassment and discrimination based on her sex in 2011. Assistant Crew Supervisor Frank Schoenstein ("Schoenstein" or "Supervisor Schoenstein") sexually harassed and discriminated against her based on her sex. *Id.* ¶ 13. She reported Schoenstein to Defendant's Division of Civil Rights and Affirmative Action ("DCRAA"). *Id.* ¶ 14. DCRAA failed to take proper remedial measures, and Schoenstein continued to harass and discriminate against Plaintiff and others. *Id.* ¶¶ 15–16. On or around January 2013, Supervisor Schoenstein was transferred to a different location, Plaintiff asserts, because of repeated complaints. *Id.* ¶ 17.

Sometime in early 2014, Plaintiff noticed and reported certain safety concerns at work. *Id.* ¶ 18. Supervisor David Pusey ("Pusey" or "Supervisor Pusey") ignored the reports. *Id.* Plaintiff then reported the safety concerns on June 7, 2014, to the New Jersey Department of Labor and Workforce Division of Public Safety ("NJ Department of Labor Report"). *Id.* ¶ 20. In her report, she complained that she experienced discrimination and harassment based on sex. *Id.* ¶ 21. Plaintiff claims Pusey ignored her because she was a woman in a male-dominated workplace. *Id.* ¶ 20. After this report, Plaintiff experienced retaliation. *Id.* ¶ 21. Supervisor Pusey, for the first time, disciplined her for insubordination. *Id.*

On September 15, 2014, Supervisor Steve Mongiovi ("Supervisor Mongiovi") referred to her as a "Guinea" – a derogatory slur used to refer to Italians. *Id.* ¶ 22. Again, Plaintiff

complained to Defendant's DCRAA. *Id.* ¶ 23. She claims the retaliation continued. *Id.* In one instance, Defendant's Equipment Operator Michael Stites ("Operator Stites") referred to Plaintiff as a "dyke" and "carpet muncher" – derogatory terms used to refer to homosexual women. *Id.* ¶ 24.

Plaintiff complained to various supervisors about the hostility that she experienced. *Id.* ¶ 25. In one instance, she witnessed Supervisor Mongiovi grab a male co-worker's backside in a sexually inappropriate manner. *Id.* ¶ 27.

In April 2015, Plaintiff filed an internal complaint with the Equal Employment Opportunity Commission ("EEO Complaint") that described a hostile work environment. *Id.* ¶ 30. This complaint focused on Supervisor Mongiovi's use of derogatory slurs based on ethnicity, ancestry, and national origin. *Id.* The EEO Complaint included reports of Supervisor Mongiovi's sexual harassment of Plaintiff and other co-workers. *Id.*

Plaintiff claims that the retaliation continued after the EEO Complaint. *Id.* ¶ 35. For example, on April 20, 2015, shortly after the EEO Complaint, Operator Stites called Plaintiff a "whore." *Id.* ¶ 31. On April 29, 2015, Supervisor Mongiovi assaulted her by forcefully and deliberately slamming a truck door on her foot. *Id.* ¶ 33. He was later found guilty of this assault. *Id.* ¶ 45.[2] As a result of this environment, Plaintiff requested a temporary transfer to Defendant's Mays Landing location. *Id.* ¶ 35. Following the transfer, Supervisor Mongiovi began to appear at the Mays Landing location and continued to make hostile and retaliatory comments toward Plaintiff. *Id.* ¶ 37.

---

[2] While Defendant disputes this in the Motion to Dismiss, the Court accepts the factual allegations in the complaint as true in deciding a Motion to Dismiss.

On July 27, 2015, Defendant issued a determination based on Plaintiff's April 2015 EEO Complaint. *Id.* ¶ 38. Plaintiff alleges that Defendant's internal investigation found witnesses who could confirm that (1) Mongiovi used the term "Guinea" when speaking to Plaintiff; (2) Mongiovi grabbed an employee's backside; and (3) another Supervisor was aware of these incidents and did not refer them to the proper department. *Id.* On July 28, 2015, Plaintiff filed a charge of discrimination with the EEOC. *Id.* ¶ 40. The EEOC Charge indicated that Plaintiff Lombard was discriminated against at her place of employment from April 1, 2015 to July 28, 2015. ("Charge" or "EEOC Charge") [Doc. No. 10-2]. The Charge cited discrimination based on her sex, national origin, and retaliation, and stated that the violation took place as a "continuing action." *Id.* Plaintiff wrote, "On or about April 2015, I internally reported harassment . . . reported concerns. . . [have been] targeted for harassment and intimidation . . ." *Id.*

Following Plaintiff's EEOC filing, she asked for Supervisor Mongiovi to be transferred, but Defendant ignored her request. *Id.* ¶ 41–42. On October 19, 2015, six weeks later, Plaintiff resigned from her employment as a result of continued discrimination. *Id.* ¶ 44.

On March 24, 2017, the EEOC issued a determination that substantiated Plaintiff's allegations in the July 2015 EEOC Charge. *Id.* ¶ 46. Specifically, the EEOC found "reasonable cause to believe that [Defendant] violated Title VII by subjecting [Plaintiff] to harassment. . ." EEOC Letter Determination [Doc. No. 10].

Plaintiff filed the instant action on January 30, 2018, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the New Jersey Law Against Discrimination. Compl. ¶ 1. Specifically, Plaintiff claims Defendant subjected her to harassment based on sex, sexual orientation, ethnicity, ancestry, and national origin (Count I). *Id.* She also claims

Defendant retaliated against her for complaining of the harassment, and that she was constructively discharged as a result (Count II). *Id.* Defendant moved to dismiss both counts. Def. Mot. to Dismiss ("Motion to Dismiss") [Doc. No. 8].[3]

## II. LEGAL STANDARD

### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, a court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556

---

[3] Plaintiff stipulated to the dismissal of counts relating to Section 1981 and NJLAD. Pl. Br. Opp'n ("Opposition Brief") [Doc. No. 10] at 10.

U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. *Id.*

### B. Title VII and Workplace Discrimination

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against any individual because of the individual's race, color, sex, religion, or national origin. 42 U.S.C. § 2000(e)–2. A claim for sexual harassment is a form of actionable sex discrimination under Title VII. *See Meritor Savings Bank FSB*, 477 U.S. 57, 63–67 (1986). The United States Supreme Court has recognized claims for hostile work environment to be one of the two categories of sexual harassment claims under Title VII. *Id*. at 65.

Title VII outlines specific requirements that a potential Plaintiff must satisfy before bringing a cause of action in federal court. One such requirement is that a plaintiff must file an employment discrimination charge with the Equal Employment Opportunity Commission (EEOC) within 180 days after an "alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1). However, this 180-day deadline is extended to 300 days after the incident if the alleged victim files with a state entity authorized to grant or seek relief with respect to the alleged unlawful practice. *Id.*

For purposes of identifying whether a plaintiff has timely filed an EEOC charge, Courts distinguish between claims of discrete acts of discrimination from claims of hostile work environment discrimination. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). Discrete acts—such as termination, failure to promote, denial of transfer, or refusal to hire—are easy to identify. *Id.* at 114. Importantly, each discrete act starts a new clock for filing

charges. Therefore, the EEOC charge must be filed within the 180- or 300-day period after the discrete act occurred. 42 U.S.C. § 2000e–5(e)(1). Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. *See Int'l Union of Electrical, Radio, & Machine Workers v. Robbins & Myers, Inc.*, 429 U.S. 229, 234–35 (1976).

Hostile work environment claims are different from discrete acts. A hostile work environment claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice." 42 U.S.C. § 2000e–5(e)(1). These claims occur over a series of days or perhaps years. *See Meritor Savings Bank FSB*, 477 U.S. at 57 (plaintiff's claim for sexual harassment encompassed incidents over a four-year period); *Broderick v. Ruder*, 685 F. Supp. 1269 (D.D.C. 1988) (plaintiff's claim was based upon incidents spanning six years). In *Morgan*, Justice Thomas explained,

> Determining whether an actionable hostile environment claim exists requires an examination of all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

536 U.S. 101, 116 (citing *John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 114 (1993)). Therefore, "a court's task is to determine whether the acts about which an employee complains are part of the *same* actionable hostile work environment practice, and if so, whether *any* act falls within the statutory time period." *Id.* (emphasis added).

### III. DISCUSSION

#### A. Count I

Plaintiff alleges that Defendant violated Title VII by subjecting Plaintiff to discrimination and a hostile work environment because of her ancestry, ethnicity, sex, and national origin. Compl. ¶¶ 52–53. We limit our focus on this claim to discrimination based on sex and national

origin for two reasons. First, Title VII does not prohibit discrimination based on ethnicity. *See Suri v. Foxx*, 69 F. Supp. 3d 467, n.9 (D.N.J. 2014) (explaining that "[e]thnicity does not have a clear definition in the law . . . ."). Second, courts have interpreted ancestry and national origin synonymously. *See Espinoza v. Farah Mfg. Co., Inc.*, 414 U.S. 86, 89 (1973) ("[T]he terms 'national origin' and 'ancestry' were considered anonymous" by the drafters of Title VII, and that statute applies equally to both"). Therefore, we consider whether Count I states a claim for a Title VII violation based only on sex and national origin.

1. *Whether Count I states a claim for discrimination based on sex*

Plaintiff Lombard asserts a claim for sexual discrimination under the theory of a hostile work environment. A Plaintiff states a cause of action for hostile work environment if she alleges that unwanted sexual conduct has occurred that has the purpose or effect of unreasonably interfering with her work performance or creating an intimidating, hostile, or offensive working environment. *Meritor*, 477 U.S at 65. As explained above, a plaintiff bringing a claim for hostile work environment is not subject to the same restrictions as someone bringing a claim for a discrete act of discrimination. Thus, a plaintiff can successfully bring a hostile work environment claim alleging a continuing pattern of unlawful conduct so long as one discriminatory act occurred within the period. *Morgan*, 536 U.S. at 117 ("It does not matter . . . that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability").

As such, before considering the frequency and degree of the discriminatory conduct, the threshold question is whether *any* of the alleged incidents fall within the statutory period.

*Morgan*, 536 U.S. at 116. Because Plaintiff filed her complaint with the New Jersey Division on Civil Rights, we examine Defendant's conduct within 300-days from Lombard's EEOC Charge. 42 U.S.C. § 2000e–5(e)(1). Therefore, we consider whether Plaintiff Lombard alleged any incidents of sex discrimination from October 1, 2014, to July 28, 2015.

At least two incidents satisfy the threshold issue and occurred within 300 days of the EEOC charge. First, Operator Stites called her a "whore" on April 20, 2015. Compl. ¶ 31. Second, Supervisor Mongiovi assaulted her by "forcefully and deliberately slamming a truck door on [her] foot, causing bruising." Compl. ¶ 33. *See Meritor Savings Bank FSB*, 477 U.S. at 65 ("Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule and insult.") These occurrences are not "isolated or sporadic acts" but are "reasonably related" to Lombard's claim of hostile work environment. *See Bronze Shields, Inc. v. New Jersey Dep't of Civil Serv.*, 667 F.2d 1074, 1080–84 (3d Cir. 1981).

Defendant argues that Stites' comments do not fall within the statutory period because they are not specifically reported in the EEOC Charge. Reply Brief at 3 [Doc. No 11]. The relevant statute does not support this argument. First, 42 U.S. 2000e–5(b) says, "Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires." 42 U.S. 2000e–5(b). Plaintiff Lombard submitted her Charge on an EEOC-provided form, the EEOC accepted the Charge, and the EEOC later issued a determination in support of Plaintiff's allegations. Second, Plaintiff's Charge satisfied the notice requirement underlying 42 U.S.C. 2000e–5(b). That is, the EEOC Charge is designed to notify employers of alleged discrimination.

The EEOC Charge at issue indicated that Plaintiff Lombard was discriminated at her place of employment from April 1, 2015, to July 28, 2015. EEOC Charge [Doc. No. 10]. The

charge listed discrimination based on her sex, national origin, and retaliation, and stated that the violation took place as a "continuing action." *Id.* Plaintiff Lombard wrote, "On or about April 2015, I internally reported harassment . . . reported concerns. . . [have been] targeted for harassment and intimidation . . ." *Id.* Not only was defendant given satisfactory notice, but the EEOC found "reasonable cause to believe that [Defendant] violated Title VII by subjecting [Plaintiff] to harassment. . ." EEOC Letter Determination [Doc. No. 10].

Looking beyond the threshold issue, Defendant argues that Plaintiff's complaint "does not set forth any events, relevant dates, or details of any alleged acts of discrimination based on gender or ancestry other than a single comment made by Mongiovi on September 14, 2014." Motion to Dismiss at 7. To support this position, Defendant relies on the Supreme Court's ruling in *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002). There, the Supreme Court held that the Second Circuit had impermissibly used a heightened pleading requirement in discrimination cases. *Id.* at 511–13. Indeed, the central holding of *Swierkiewicz* is that an employment discrimination complaint need not include specific facts establishing a *prima facie* case of discrimination. *Id.* The Court then considered the correct standard alongside the Plaintiff's complaint and found the complaint to be sufficient. *Id.* The *Swierkiewicz* Court explained, "[h]is complaint detailed the events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination." *Id*. at 513.

Defendant focuses on this language and crafts a *per se* rule that all Title VII complaints require the dates and locations of every discriminatory act. Defendant then argues that certain statements attributed to Supervisor Mongiovi lacked "facts about the setting of the remark" and therefore violate the pleading "rule" set forth in *Swierkiewicz*. Motion to Dismiss at 7. Even if

the Court accepted this formalistic reading of the case, Plaintiff Lombard plausibly alleges other instances of discrimination with sufficient specificity.

As explained above, a hostile work environment claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice." 42 U.S.C. § 2000e–5(e)(1). Plaintiff alleges various facts that suggest Defendant created a hostile, offensive, and intimidating workplace. *See Meritor Savings Bank FSB*, 477 U.S. 57 (1986). Most obviously, various supervisors and employees called her various offensive and discriminatory names. Operator Stites called her a "dyke," "whore," and "carpet muncher." Compl. ¶ 24, 31. Supervisor Mongiovi referred to her as a "Guinea" and encouraged others to abuse her. Mongiovi also "assaulted [her] by forcefully and deliberately slamming a truck door on [her] foot . . ." *Id*. ¶ 22, 33. Taken collectively, the conduct alleged appears sufficiently severe and pervasive to alter the conditions of Plaintiff's employment.

### 2. *Whether Count I states a Title VII claim for discrimination based on national origin*

Plaintiff next claims she was discriminated on the basis of her national origin. Specifically, she asserts that on September 15, 2014, Supervisor Mongiovi, called her a "Guinea." Compl. ¶ 22. She also states that she made "numerous complaints about Supervisor Mongiovi's use of the word 'Guinea.'" Compl. ¶ 26. Meanwhile, Defendant argues that the September 15 comment is barred because Plaintiff filed the EEOC charge identifying the incident more than 300 days after it had occurred. While Defendant and Plaintiff disagree as to whether the comment is a "discrete event" or part of a continuing violation, this Court reaches the same conclusion: Count I does not state a claim for discrimination based on national origin.

When viewed as a discrete event, Mongiovi's comment fails to support a claim for discrimination based on national origin. Defendant rightly focuses on the timing of Mongiovi's

comment. The complaint states that the act occurred on September 14, 2014. As such, this occurrence falls outside the 300-day window prior to Plaintiff's July 28, 2015 EEOC Charge. The claim of discrimination based on national origin therefore fails as a discrete event.

When viewed as part of a continuing violation, Mongiovi's comment also fails to survive a motion to dismiss. Under this theory, a plaintiff may pursue a Title VII claim for discriminatory conduct that began outside the limitations period if she can demonstrate that the act is part of an ongoing practice or pattern of discrimination effected by the defendant. *Jewett v. Int'l Tel. & Tel. Corp.*, 653 F.2d 89, 91 (3d Cir. 1981), *cert. denied*, 454 U.S. 969 (1981). To rely on this theory, the plaintiff must prove that a violation occurred within the limitations period and that such violation is "reasonably related" to prior discriminatory acts alleged. *Bronze Shields, Inc.*, 667 F.2d at 1080–84 (3d Cir. 1981), *cert. denied*, 458 U.S. 1122 (1982). Factors to consider in determining whether a plaintiff can support a claim for a continuing violation are subject matter, frequency, and degree of permanence. *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 475 (5th Cir. 1989).

Here, the comment does not involve the same subject matter of the hostile work environment claim. The hostile work environment claim discussed above is substantially based on sex discrimination. Plaintiff was called a "dyke," "carpet muncher," and "whore." These incidents evoke a type of discrimination—sex discrimination—unrelated to the single instance of Mongiovi calling Plaintiff a "Guinea." Also, the frequency of Mongiovi's comments is not clear. The complaint does not indicate how often or when Mongiovi used the term other than the one instance on September 15, 2014 which is outside the 300-day period. As such, the single mention of the word does not give rise to a continuing violation. While Plaintiff is right to point

out that courts are willing to consider some non-sexual conduct in hostile work environment claims,[4] this argument does not support a *separate* claim for national origin.

Thus, while Count I survives Defendant's motion to dismiss because Plaintiff has sufficiently plead facts in support of a claim for sex discrimination, these facts do not support a stand-alone claim for discrimination based on national origin. The comments regarding national origin that appear on the complaint are outside the statutory period and are not sufficiently related to the discriminatory acts based on sex. Plaintiff's claim of discrimination within count I survives on a theory of hostile work environment only.

### B. Count II

Like the claim for discrimination above, a plaintiff making a retaliation claim shall file a claim with the Equal Employment Opportunity Commission (EEOC) either 180 or 300 days after an "alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1). Title VII prohibits an employer from discriminating against an employee "because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e–3(a).

To establish a claim of retaliation under either statute, a plaintiff must show that she (1) engaged in a protected activity; (2) suffered an adverse employment action; and (3) that there is a causal connection between her participation in the protected activity and the adverse employment

---

[4] In hostile work environment claims, many courts do not require offending conduct to be explicitly sexual in nature. *See, e.g.*, *Kopp v. Samaritan Health Sys., Inc.*, 13 F.3d 264, 269 (8th Cir. 1994); *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1485 (3d Cir. 1990); *Hall v. Gus Const. Co., Inc*., 842 F.2d 1010, 1014 (8th Cir. 1988); *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1415 (10th Cir. 1987); *Bell v. Crackin Good Bakers, Inc.*, 777 F.2d 1497, 1503 (11th Cir. 1985); *McKinney v. Dole*, 765 F.2d 1129, 1138 (D.C. Cir. 1985); *Robinson v. Jacksonville Shipyards, Inc.*, 760 F. Supp. 1486, 1522 (M.D. Fla. 1991); *Laughinghouse v. Risser*, 754 F. Supp. 836, 840 (D. Kan. 1990).

action. *See Green v. Port Auth. of N.Y. and N.J.*, No. 07–3910, 2009 WL 3627962, at * 18 (D.N.J. 2009) (citing *Moore v. City of Phila.*, 461 F.3d 331, 340–41 (3d Cir. 2006)); *O'Brien v. Int'l Bus. Machines, Inc.*, No. 06–4864, 2009 WL 806541, at *33 (D.N.J. 2009) (citing *Craig v. Suburban Cablevision, Inc.*, 140 N.J. 623, 660 A.2d 505 (1995)). This post-*Twombly* pleading standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556)).

   1. ***Whether Plaintiff engaged in "Protected Activity"***

Plaintiff Lombard engaged in protected activity within the 300-day window. While Defendant admits that this prong is satisfied, the admission only focuses on Plaintiff's EEOC Charge. Motion to Dismiss at 8. Lombard's protected activity, however, extended to the three other instances of her reporting harassment and discrimination. Compl. ¶¶ 23, 30, 34, 40. Specifically, she reported instances of discrimination and harassment to the DCRAA, EEO, and to Commissioner Victor. As the Third Circuit made clear in *Connelly*, an employee engages in protected activity by complaining to his or her employer about conduct that is prohibited by Title VII. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 792 (3d Cir. 2016); s*ee also Clark County v. Breeden*, 532 U.S. 268, 271 (2001).

   2. ***Whether there was an "Adverse Employment Action"***

A constructive discharge constitutes an "adverse employment action" for purposes of Title VII and, if proven, is the legal equivalent of being terminated. *Price v. Del. Dep't of Corr.*, 40 F.Supp.2d 544, 552–53 (D. Del. 1999) (citing *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1079 (3d Cir. 1992)). Under a constructive discharge analysis, courts determine whether "the employer knowingly permitted conditions of discrimination in employment so intolerable that a

reasonable person subject to them would resign." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1084 (3d Cir. 1996); *see also Pa. State Police v. Suders*, 524 U.S. 129, 131 (2004). As our Circuit noted in *Spencer*, this is an objective standard. *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 316 n.4 (3d Cir. 2006).

Viewing the allegations in Plaintiff's complaint as true, this Court finds that Lombard has adequately alleged a constructive discharge. The Complaint explains that Plaintiff was treated with hostility and harassment following her various complaints. Compl. ¶ 23, 31, 33. In response to her complaint to the DCRAA, she was referred to as a "dyke," "carpet muncher," and "whore." *See Ellingsworth v. Hardford Fire Ins.*, 247 F. Supp. 3d 546, 556 (E.D. Pa. 2017) (finding an adequate allegation of constructive discharge when Plaintiff was repeatedly called a "dyke" and ridiculed). Next, Plaintiff alleges that Supervisor Mongiovi assaulted her following the internal EEOC complaint. Compl. ¶ 33. Even when she transferred to the Mays Landing location, Mongiovi continued to appear at the new location. Again, Plaintiff emphasizes that she feared for her personal safety and was subject to continued harassment that led to her ultimate resignation. *Id.* ¶ 44.

### 3. *Whether the complaint alleges a "Causal Connection"*

"[A] plaintiff may rely on a 'broad array of evidence' to demonstrate a causal link between his protected activity and the adverse action taken against him." *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 284 (3d Cir. 2000)). In some scenarios, an unusually suggestive proximity in time between the protected activity and adverse employment action may establish this element. *Id.* Where there is no unusually suggestive temporal proximity, courts look to "the intervening period for . . .

circumstantial evidence . . . that give[s] rise to an inference of causation when considered as a whole." *Id*. (citations omitted).

Here, Plaintiff's complaint reveals a close temporal proximity between when she complained of discrimination and when the hostility and harassment became so intolerable that she felt compelled to resign. This close proximity is further shown when considering the EEOC Charge. This Charge indicated that the discrimination and retaliation took place between April 1, 2015 and July 28, 2015. Within this short period, Plaintiff reported harassment based on her sex and national origin. After Plaintiff's internal reports, she was referred to as "gay, carpet muncher, [and] dyke." *Id.* In addition, following her complaint to DCRAA representatives, Supervisor Mongiovi continued to harass Plaintiff and encouraged Operator Stites to do so as well. Compl. ¶ 24. She notes in her Charge the ongoing complaints she made regarding harassment and retaliation. "It should be noted that this is not the first time that I have reported the same . . . ." EEOC Charge. Taken collectively, Plaintiff offers facts that lend support to her claim of retaliation. These many instances occurred within a short window as advanced by the EEOC Charge.

The incidents seem to have continued after the EEOC Charge as well. For example, the complaint alleges that hostility continued and that she subsequently requested to transfer to the Mays Landing location. Plaintiff claims that Mongiovi followed her to this location, and that her subsequent requests to have him removed went unanswered. This range of circumstantial evidence also supports an allegation based upon Plaintiff's constructive discharge. Plaintiff resigned on October 19, 2015—less than six weeks after her filing of an EEOC Charge—because of discrimination, harassment, and retaliatory treatment. Compl. ¶ 44. This short period of time suggests that the described instances of discrimination contributed to her eventual resignation.

Moreover, the EEOC determined that Plaintiff's allegations within the EEOC Charge were reasonable and warranted further investigation.

Finally, we briefly highlight this Circuit's emphasis on the fact-intensive nature of constructive discharge claims. For example, in *Hill*, the Third Circuit explained the general disposition of a constructive discharge claim is too fact-intensive to be decided in the context of a 12(b)(6) motion. 455 F.3d, 225, n.7 (3d. Cir. 2006); s*ee also Levendos v. Stern Entm't, Inc.*, 860 F.2d 1227, 1230 (3d Cir. 1988) ("constructive discharge is a fact intensive inquiry.") Given Plaintiff's factual allegations and this language, this Court finds that Count II survives Defendant's motion to dismiss.

**CONCLUSION**

For the above reasons, the Defendant's motion to dismiss is denied.

Dated:   10/30/2018                                                                       s/ Robert B. Kugler

ROBERT B. KUGLER

United States District Judge